POSTED ON WEBSITE
NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

In re                             )   Case No. 25-10499-B-7
                                   )
**JEFFREY REICH,**                  )   Docket Control No. MEZ-1
                                   )
                                   )
                 Debtor.     )
                                   )
_____ )

**MEMORANDUM RULING ON MOTION TO
DISQUALIFY COUNSEL FOR PAMELA REICH**

_____

Megan Zavieh, ZAVIEH LAW, for JEFFREY REICH, Debtor; Peter B. Bunting, PETER BUNTING, ATTORNEY AT LAW, for JEFFREY REICH, Debtor.

Shane Reich, THE LAW OFFICES OF SHANE REICH, for Pamela Reich, Creditor.

Anthony D. Johnson, FORES MACKO JOHNSTON & CHARTRAND, for Irma Edmonds, Chapter 7 Trustee.

Irma Edmonds, Chapter 7 Trustee.

_____

RENÉ LASTRETO II, Bankruptcy Judge:

     This matter comes before the court on the motion of debtor Jeffrey Reich ("Jeffrey") seeking an order disqualifying Shane Reich ("Shane") from representing Pamela Reich ("Pamela") or any other third party in Jeffrey's bankruptcy proceedings ("the Bankruptcy Case"), including but not limited to the adversary proceeding brought by Pamela against Jeffrey in *Reich v. Reich*,

1

Case No. 25-1022 ("the Adversary"), that is currently pending before this court. Doc. #65 *et seq.*

**INTRODUCTION**

The following facts gleaned from the record are undisputed. Jeffrey is a Chapter 7 debtor in the main case and the Defendant in the Adversary. Pamela is Jeffrey's estranged wife with whom Jeffrey is undergoing extremely protracted divorce proceedings lasting about ten years so far. The dissolution proceedings are pending in the Fresno County Superior Court. Pamela is also one of Jeffrey's creditors and is the Plaintiff in the Adversary. Shane is the son of Jeffrey and Pamela. Shane, a practicing attorney, is representing Pamela in both the Bankruptcy Case and the Adversary. Shane was previously employed by Jeffrey in a professional capacity at Jeffrey's law firm ("the Firm") for approximately twenty years. The Firm is also a marital asset and an integral part of both the divorce proceedings and the concomitant community property disputes which lie at the heart of the Adversary.

Pamela opposed this motion. On July 29, 2025, the court entered a prehearing disposition exercising its authority to resolve this motion on the pleadings without need for oral argument. Doc. #154.

> Unless the assigned judge determines that the resolution of the motion does not require oral argument, he or she may hear appropriate and reasonable oral argument. Alternatively, the motion may be submitted upon the record and briefs on file if the parties stipulate thereto, or the judge so orders, subject to the power of the judge to reopen the matter for further briefs, oral argument or both.

LBR 9014-1(h). The court directed that all pleadings be closed as of July 28, 2025. Doc. #154. The court has reviewed the declarations, exhibits, and arguments and is now prepared to rule. This motion will be GRANTED.

## JURISDICTION

This court has jurisdiction of this matter by reference from the District Court under 28 U.S.C. § 157 (a).  The District Court has jurisdiction under 20 U.S.C. § 1334(b).  This is a matter the Bankruptcy Court may hear and finally determine.  28 U.S.C. § 157 (b)(2) (A) and (O)

## DISCUSSION

1.  **Procedural History**.

The filings in this case are extensive and include the following:

    a.    Jeffrey's Motion to Disqualify Shane as Pamela's counsel ("the Motion"). Doc. #65.

    b.    The Declaration of Sona Vartanian ("Sona") in support of the Motion. Doc. #66. The relationship between Sona and the other parties is somewhat nebulous beyond Sona being one of Jeffrey's current employees, but she is apparently an important figure in Jeffrey and Pamela's divorce proceedings and thus, by extension, this Adversary, as will be discussed further below.

    c.    A Memorandum of Points and Authorities in support of the Motion. Doc. #68.

d.   Jeffrey's first declaration ("Jeffrey's First
     Declaration"). Doc. #69.

e.   Shane's initial opposition to the motion. Doc. #97.
     Shane's first declaration ("Shane's First
     Declaration"). Doc. #98.

f.   Jeffrey's Reply Brief filed on June 17, 2025. Doc.
     #102. This reply solely addressed Shane's First
     Declaration and was filed prior to the court's June 24
     order.

g.   Declaration of Kelly McNeil in support of the Motion.
     Doc. #103. McNeil is Jeffrey's long-time CPA, and he
     attested that Shane handled "most of the financial
     duties of the firm" and was McNeil's primary contact
     regarding the firm's payroll and tax matters.

h.   Jeffrey's second declaration ("Jeffrey's Second
     Declaration") in support of the Motion filed on June
     17, 2025, filed in response to Shane's First
     Declaration. Doc. #104. Jeffrey avers in this
     declaration that many of Shane's statements are false
     or inaccurate.

i.   The court's civil minutes and order dated June 24,
     2025. Doc. #118. In the minutes, the court noted that
     the original notice of motion inaccurately stated that
     the motion was to be heard on less than 28 days' notice
     and a written response was not necessary.  In fact,
     more than 28 days' notice was given. A written response
     was therefore necessary under the local rules.  But the
     notice was confusing and ambiguous. Shane filed Shane's

4

First Declaration "in Support of Opposition" to the
Motion, and Shane required additional time to more
fully brief the matter given the ambiguity of the
notice of motion. On June 24, 2025, the original
hearing date, the court entered an order continuing the
hearing to July 29, 2025, and directed Shane to file
any supplementary briefs or other relevant
documentation by July 15, 2025, with Jeffrey to file a
reply, if any, by July 22, 2025. Doc. #118.

j. Shane's Supplemental Opposition to the Motion filed on
July 15, 2025. Doc. #144.

k. Pamela's Declaration filed on July 15, 2025. Doc. #145.
This brief declaration only addresses Pamela's limited
funds and claims that it would be a hardship on her if
Shane were disqualified and she were now forced to find
another attorney.

l. Shane's Supplemental Declaration ("Shane's Second
Declaration") in opposition to the Motion filed on July
15, 2025. Doc. #146. This declaration is mainly a
denial of allegations made regarding his past legal
representations of Sona and Jeffrey.

m. Jeffrey's Supplemental Reply Brief filed on July 21,
2025. Doc. #148.

n. Declaration of Michael L. Farley ("the Farley
Declaration"), filed on July 21, 2025.

2. **The Relevant Contested Facts**.

To expand on the facts outlined above, Jeffrey moves to
disqualify Shane as Pamela's attorney on the grounds that Shane,

in addition to being Jeffrey's son, was also his employee at
Jeffrey's law firm from 2002 until sometime in 2021, and, in that
capacity, he was also Jeffrey's counsel in matters pertaining to
Jeffrey's financial affairs. Doc. #65. Jeffrey further alleges
that Shane possesses confidential information related to
Jeffrey's financial affairs obtained both as Jeffrey's counsel
and as his employee. *Id.* The Motion asserts that Shane has both
attorney-client duties and fiduciary duties owed to Jeffrey which
preclude him from acting as Pamela's counsel in these matters.
*Id.*

Jeffrey alleges that, at the time his separation from Pamela
commenced in 2013, he asked Shane to act as Jeffrey's bookkeeper
as well as continuing as an attorney at Jeffrey's firm. Doc. #69.
Jeffrey alleges that, at some point during this period, Shane
assisted Pamela in misappropriating between $300,000.00 and
$500,000.00 from Jeffrey. *Id.* Jeffrey also alleges that Shane
personally represented Jeffrey in a lawsuit (*ZB N.A. a national
banking association dba California Bank & Trust v. Jeffrey K.
Reich*, Los Angeles Case No. KC0683171, or "the ZB N.A. Case"), a
foreclosure and collection action against Jeffrey. *Id.* While
working on behalf of Jeffrey in the ZB N.A. Case, Jeffrey
alleges, Shane gained complete knowledge of Jeffrey's financial
affairs at a time when his dissolution proceedings with Pamela
were ongoing. *Id.*

During those dissolution proceedings, and allegedly while
still representing Jeffrey, Shane became involved with his
parents' divorce, taking a position favoring Pamela. *Id.* Shane
has not made a formal appearance in the dissolution proceeding.

Pamela is represented by other counsel. Jeffrey also claims that, based on his knowledge of Shane's writing style gleaned from their years working together, Jeffrey believes that Shane wrote or helped to write certain legal documents raising accusations against Jeffrey and Sona in the pending dissolution proceeding. *Id.* Jeffrey and Sona have some sort of personal relationship, though the parties disagree on its nature. *Id.* In state court filings, Pamela asserted through counsel that Sona was Jeffrey's girlfriend, which Jeffrey has denied. *Id.*

Jeffrey concedes that he, at the time the Motion was filed, was "housesitting" for Sona, but Shane and Pamela have alleged that Jeffrey provided the money which Sona used to purchase that property. *Id.* Jeffrey argues that it is impossible for Shane to represent his mother in this bankruptcy case without making use of confidential information about Jeffrey's finances obtained both through his employment at Jeffrey's firm and in his personal representation of Jeffrey in the ZB N.A. Case, which was a foreclosure action in which Jeffrey's finances and his entitlement to certain exemptions were at issue. *Id.*

Jeffrey's First Declaration is accompanied by exhibits (improperly attached to the declaration, though the court has chosen to overlook that procedural error) which include filings made by Shane on behalf of Jeffrey in the ZB N.A. Case involving Jeffrey's financial affairs and his claimed exemptions of certain property from attachment efforts by ZB N.A. *Id.* Jeffrey claims that this bankruptcy case involves the condition of his finances and his business approach. *Id.* Jeffrey also claims he shared everything about his finances with Shane at that time. *Id.*

Jeffrey states that it is "impossible" for Shane to represent
Pamela in this bankruptcy without using confidential information
about Jeffrey acquired while Shane worked for Jeffrey and
represented Jeffrey in numerous matters. *Id.*

Sona's declaration is brief. Doc. #67. She claims that she
has been employed by Jeffrey for 10 years, that Shane and Jeffrey
represented her in several cases (one of which resulted in a
nearly $1.9 million judgment for her), and that Shane knows that
Sona is the owner of the home which Jeffrey his housesitting and
which she, not Jeffrey, paid for. *Id.*

In Shane's First Declaration, he claims that he "assisted"
with bookkeeping at the community property law firm for a time
but was "never solely responsible for that function." Doc. #98.
Shane denies handling all Jeffrey's financial paperwork, but he
concedes he handed at least "some of it." *Id.* Shane claims that
Jeffrey agreed that he could share some of Jeffrey's financial
information with Pamela because Pamela had a continuing interest
in the community property law firm. *Id.* Shane claims that he
represented both Jeffrey and Pamela in the ZB N.A. Case because
it was an attempt to foreclose on community property. *Id.* Shane
denies misappropriating funds. *Id.* Rather, Shane declares, it was
Jeffrey who concealed various aspects of his finances. *Id.* Shane
is a creditor to Jeffrey over debts owed to him prior to the
petition. *Id.* Shane describes his representation of Sona as
"limited" and claims it did not expose him to any confidential
information that would merit disqualification. *Id.* Shane denies
knowing the source of the funds Sona used to purchase a residence
in which Jeffrey presently "housesits." *Id.* Shane states: "not

all of the information or even a substantial part of the
information relating to my father was derived from my very
limited representation of him." *Id.*

   The Declaration of Kelly McNeil is brief. Doc. #103. McNeil,
Jeffrey's CPA for about 40 years, claims that from 2013 through
much of 2016, Shane appeared to handle all the bookkeeping,
payroll, and tax deposits for the community property firm, and he
worked with McNeil on payroll and tax matters. *Id.* The rest of
McNeil's Declaration consists of hearsay statements and claims
that he does not recall any evidence supporting some of Shane's
assertions about Jeffrey's finances and Shane's own role in the
community property firm. *Id.* He also states he does not recall
Shane complaining about Jeffrey preventing Shane's access to
financial information.  *Id.*

   Jeffrey's Second Declaration adds little. Doc. #104. He
claims that Shane was the only person doing bookkeeping for him
during the relevant time period, and he denies that he or anyone
else at the firm interfered with Shane's access to confidential
financial information. *Id.* He further denies authorizing Shane to
share his financial information with Pamela after the marital
separation. *Id.* He alleges that he stopped Shane's access to
financial information upon coming to believe that Shane had
misappropriated money from Jeffrey on behalf of his mother and
himself. *Id.* He claims that in the ZB N.A. Case, Shane was only
representing him and not Pamela. *Id.*

   Jeffrey also claims that Shane was heavily involved in the
firm's representation of Sona, which is relevant to this case
because Pamela seeks, *inter alia*, stay relief to pursue a lawsuit

against both Sona and Jeffrey to determine the true ownership of the home which Sona purportedly owns and where Jeffrey is "housesitting." *Id.*

Shane's Third Declaration consists mainly of denials of assertions in Jeffrey's Second Declaration. Doc. #146. Shane claims that he had only "limited interactions" with McNeil, that he has not represented Jeffrey in any matter substantially related to the instant bankruptcy, that he regularly complained to Jeffrey about being denied access to Jeffrey's financial records, and that he has not represented Jeffrey or Sona on any matter "substantially related" to Jeffrey's bankruptcy. *Id.* He denies the existence of any prior representations or access to confidential information that would justify disqualification. *Id.* Shane also claims that Sona has waived any privilege because she is currently suing Shane and others in an unrelated lawsuit.

Finally, the Declaration of Michael L. Farley ("the Farley Declaration") was filed on July 21, 2025. Doc. #149. Farley declares that he is an attorney representing Sona in a state case entitled *Sona Vartanian v. Laura M. Boyd, Shane Reich, and Pamela Reich,* Fresno Case No. 25CECG02564. *Id.* Attached to the Farley Declaration are email exchanges between Farley and attorney Ryan McGrath, who apparently represents Pamela (and possibly others) in that case. *Id.* The Farley Declaration was presumably offered to show that Pamela already has counsel other than Shane representing her which obviates her complaints about being unable to afford representation.

///

///

1    3. **Legal Analysis**.

2         In the court's view, there are three separate aspects of

3    Shane's prior professional relationship with Jeffrey that are

4    implicated by his current representation of Pamela: (A) Shane's

5    prior work as Jeffrey's attorney, (B) Shane's prior bookkeeping

6    work on behalf of Jeffrey, and (C) Shane's relationship with

7    Jeffrey outside of either the attorney client or bookkeeping

8    relationship. The court will address each point in turn.

9         Federal courts apply state law to decide motions to

10   disqualify. *In re County of Los Angeles*, 223 F. 3d 990,995 (9th

11   Cir. 2000). In this District, Bankruptcy Courts follow District

12   Court Rule 180(e) which as relevant here says: ". . .the State

13   Bar Act, the Rules of Professional Conduct of the State Bar of

14   California, and court decisions applicable thereto, which are

15   hereby adopted as standards of professional conduct in this

16   Court." See LBR 1001-1(c).

17   A. *Disqualification based on prior representation.*

18        The Court of Appeal of California has spoken about the

19   standard of conduct for attorneys which, upon breach, may be

20   grounds for disqualification:

21        It has long been established in civil cases that the
          court has the power, on motion of a party, to
22        disqualify an opposing attorney from participating in a
          trial when, for example, the attorney improperly seeks
23        to proceed against a former client. The power to
          disqualify an attorney is simply one aspect of the
24        trial court's broad authority "[t]o control in
          furtherance of justice, the conduct of its ministerial
25        officers . . . ."

26        The prohibition against representation of a new client
          whose interests are adverse to those of a former client
27        is grounded in both the California State Bar Rules of
          Professional Conduct and governing case law. 1 Rule 3-
28        310(E) provides: "A member shall not, without the

informed written consent of the client or former client, accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment."[1]

More broadly, our Supreme Court has explained "an attorney is forbidden to do either of two things after severing his relationship with a former client. He may not do anything which will injuriously affect his former client in any matter in which he formerly represented him nor may he at any time use against his former client knowledge or information acquired by virtue of the previous relationship." The prohibition is in the disjunctive. An attorney "may not use information or 'do anything which will injuriously affect his [or her] former client.' "

A lawyer who accepts employment in violation of these rules is subject to disqualification upon motion of the former client.

"[D]etermining whether a conflict of interest requires disqualification involves more than just the interests of the parties. [P] . . . The paramount concern must be to preserve public trust in the scrupulous administration of justice and the integrity of the bar. The important right to counsel of one's choice must yield to ethical considerations that affect the fundamental principles of our judicial process.

*City Nat'l Bank v. Adams*, 96 Cal. App. 4th 315, 323-24, 117 Cal. Rptr. 2d 125, 131-33 (2002) (internal citations omitted). The *Adams* court went on to discuss the "substantial relationship" test and its development by California courts, including the California Supreme Court. *Adams*, 96 Cal. App. 4th at 324-329 (citing *Flatt v. Superior* Court (1994) 9 Cal. 4th 275, 36 Cal. Rptr. 2d 537 (adopting the substantial relationship test).

As the California Supreme Court articulated the test in *Flatt*:

///

_____

[1] Rule 3-310(E) has been superseded by Rule 1.9 of the California Rules of Professional Conduct which closely tracks the former Rule 3-10(E) and, in the court's view, does not obviate the reasoning of the cases cited herein.

> The "substantial relationship" test mediates between two interests that are in tension in such a context-- the freedom of the subsequent client to counsel of choice, on the one hand, and the interest of the former client in ensuring the permanent confidentiality of matters disclosed to the attorney in the course of the prior representation, on the other. Where the requisite substantial relationship between the subjects of the prior and the current representations can be demonstrated, access to confidential information by the attorney in the course of the first representation (relevant, by definition, to the second representation) is presumed and disqualification of the attorney's representation of the second client is mandatory; indeed, the disqualification extends vicariously to the entire firm.

*Flatt*, 9 Cal. 4th at 283-84.

As noted above, when considering a motion to disqualify an attorney, the court's "paramount concern" is preserving trust in both scrupulous administration of justice and the integrity of the bar, considerations that trump a litigant's right to their preferred counsel. *See People ex rel. Dep't of Corps. v. SpeeDee Oil Change Sys., Inc.*, 20 Cal. 4th 1135, 1145, 86 Cal. Rptr. 2d 816, 824, 980 P.2d 371, 378 (1999).

In *Adams*, the court of appeal analyzed the case law involving successive representation of clients, which led to "three conclusions that guide resolution" of the case before it. *Adams*, 96 Cal. App. 4th at 327. First, the court looked to whether the nature of the representation was such that confidences *could have* been exchanged between the lawyer and the client. *Id.* If so, the court concluded that there was a presumption that such confidences were exchanged, and disqualification was required. *Id.* Second, there was an exception to the conclusive presumption where the lawyer could show that there was no opportunity for confidential information to be

divulged. *Id.* Finally, that limited exception was not available where "the lawyer's former and current employment are on opposite sides of the very same matter, or the current matter involves work the lawyer performed for the former client." *Id.* at 328.

In the case *sub judice*, while there are significant factual disagreements between the parties as to the scope of Shane's work on behalf of Jeffrey, it seems clear to the court that Shane represented Jeffrey in some capacity in the ZB N.A. Case, a foreclosure action in which Jeffrey's entitlement to certain exemptions was at issue. That, in the court's view, represents a fundamental issue in Jeffrey's bankruptcy case and consequently the Adversary. Furthermore, Shane was employed for approximately 20 years at Jeffrey's firm, which Shane concedes is a community asset and property of the estate. Also, during that time, Shane worked in some capacity as Jeffrey's bookkeeper, a role which necessarily gave him insight into confidential information about the firm's financial status.

The court concludes that, at a minimum, confidential information *could* have been exchanged between Jeffrey and Shane about matters that are relevant to the Adversary and this bankruptcy case. Thus, the first *Adams* conclusion is applicable, and there is a presumption that confidential information was exchanged for purposes of deciding the disqualification motion.

Shane has not presented sufficient evidence to persuade the court that there was no possibility of such confidential information being exchanged. Thus, the second *Adams* conclusion is not applicable, and Shane cannot avail himself of the exception to the presumption.

Finally, even if Shane had presented enough evidence to invoke the exception, it is unavailable because the matters currently before the court (which involve determining the scope of Jeffrey's bankruptcy estate and his applicable exemptions) are core bankruptcy matters that involve, to at least some degree, work that Shane performed for Jeffrey.

The substantial relationship test resolves itself in Jeffrey's favor, and while it may be a hardship to Pamela to be required to hire a new lawyer at this stage, that has no bearing on Shane's professional responsibility as Jeffrey's former lawyer and employee. Accordingly, disqualification is appropriate.

*B.*   *Disqualification based on Shane's bookkeeping work.*

Alternatively, the court finds that disqualification would also be appropriate because of Shane's activities as Jeffrey's bookkeeper from 2013 through 2016. While Shane and Jeffrey disagree on the scope of Shane's role as bookkeeper, the court finds the McNeil Declaration to be persuasive enough to tip the balance.

McNeil declared that, based on his own observations from his work as Jeffrey's CPA, it appeared that Shane was handling most, if not all, of Jeffrey's bookkeeping. Doc. #103. McNeil also stated that Shane appeared to be handling most of the financial duties of the firm and was McNeil's primary contact regarding tax matters. *Id.* While the disagreements about the facts between Jeffrey and Shane are attributable to the acrimonious divorce proceedings which have split the Reich family into warring factions, McNeil is neither a member of the family nor a direct employee of Jeffrey and/or the firm. He is a third party who is

bound by his own ethical obligations as a practicing CPA with 44
years of experience. Though he worked as Jeffrey's CPA for about
roughly 40 of those years, he was an independent business owner,
and Shane has not alleged that McNeil was lying about his
observations, merely that they were incorrect. The court
disagrees and finds McNeil persuasive to the extent of accepting
his testimony that, in his observation, Shane was the primary
bookkeeper for Jeffrey during the period 2013-2016.

C. _Disqualification based on Shane's relationship with Jeffrey_
_outside of the lawyer/client relationship_.

    1.   The court has inherent power to disqualify counsel.

    This court possesses an inherent power to disqualify
attorneys appearing before it. _United States v. Prevezon Holding_
_Ltd._, 839 F.3d 227, 241 (2d Cir. 2016)("The authority of Federal
Courts to disqualify attorneys derives from their inherent power
to preserve the integrity of the adversary process."); _Crenshaw_
_v. MONY Life Ins. Co._, 318 F.Supp. 2d 1015, 1020 (S.D. Cal.
2004)("The disqualification of counsel because of unethical
violation is a discretionary exercise of the trial court's
inherent powers."); _Visa U.S.A., Inc. v. First Data Corp._, 241
F.Supp. 2d 1100, 1103 (N.D. Cal. 2003) ("The right to disqualify
counsel is within the discretion of the trial court as an
exercise of its inherent powers.").

    Although grounds for disqualification may be rooted in state
law, the authority to impose a sanction of disqualification
arises from the Federal Courts' "inherent powers to manage their
own proceedings and to control the conduct of those who appear
before them," and the Ninth Circuit has reversed a judgment

entered after trial when a "District Court abdicated its duty" to
address potential issues of unethical representation. *Erickson
v. Newmar Corp.*, 87 F.3d 298, 303 (9th Cir. 1996).

"Generally, only the former or current client will have such
a stake in a conflict-of-interest dispute." *Colyer v. Smith*, 50
F.Supp. 2d 966 (C.D. Cal. 1999) but, where the ethical breach is
"manifest and glaring" and so "infects the litigation in which
disqualification is sought that it impacts the moving party's
interest in a just and lawful determination of [his or] her
claims," a non-client might meet the standing requirements to
bring a motion to disqualify based upon a third party conflict of
interest or other ethical violation. *Id.* at 971. Thus,
independent of any violation of the Rules of Professional
Conduct, the inherent authority of the court based upon the facts
and circumstances of the case requires a review of the basis for
disqualification.

There are several examples of cases where in the absence of
a lawyer/client relationship, the facts and circumstances of a
prior relationship between counsel and an adverse party is a
basis for disqualification of counsel in the later dispute. *In
re Mortgage & Realty Trust*, 195 B.R. 740, 751-54 (Bankr. C.D.
Cal. 1996) (attorney and his firm disqualified from representing
company being sued by debtor because attorney was a trustee of a
trust which owned debtor and attorney owed fiduciary duties as
trustee rather than counsel); *Wm. H. Raley Co. v. Superior Ct.*,
149 Cal. App. 3rd 1042 (1983)(holding conflict of interest
arising from attorney's relationship with a non-client may arise
///

when the relationship creates the expectation that the attorney owes a duty of fidelity).

A fiduciary duty may also arise where the attorney has acquired confidential information in the course of such relationship which will be or may appear to the person to be useful in the attorney's representation in an action on behalf of a client. *See* Compendium of Professional Responsibility (State Bar Formal Opinion #1981-63 p. 3.); *Kennedy v. Eldridge*, 201 Cal. App. 4th 1197 (2011)(holding disqualification may be considered where there exists a genuine likelihood that the status or misconduct of the attorney in question will affect the outcome of the proceedings before the court).

Generally, a party seeking to bring a motion to disqualify outside of the attorney/client relationship must show "some sort of confidential or fiduciary relationship ... existed before a party is entitled to prevail." *Jarvis v. Jarvis*, 33 Cal. App. 5th 113, 132 (2019) *quoting Dino v. Pelayo*, 145 Cal. App. 347, 353, (2006). These cases establish that a broad view of a potential conflict must be taken when a previous relationship between counsel and the adverse party rises to a level of fiduciary or quasi-fiduciary.

Based upon the facts here, Shane had that type of relationship with Jeffrey during the period of Shane's employment with Jeffrey's firm. In resolving motions to disqualify, courts may resolve factual disputes and make findings based on evidence. See, *Visa U.S.A., Inc.*, 241 F.Supp. 2d at 1104.

///

///

 2.   <u>Shane was in a confidential fiduciary or quasi-</u>
<u>fiduciary relationship with Jeffrey</u>.

Under California law, a confidential relationship is not created simply by the receipt of confidential information. *Dino*, 145 Cal.App. 4th at 356-57 (*quoting Richelle L. v. Roman Catholic Archbishop*, 106 Cal.App 4th 257, 272 fn. 6 (2003)).  Instead, its creation generally hinges on an unequal relationship between parties in which one surrenders to the other some degree of control because of the trust and confidence which he reposes in the other.  *Id.*  When a confidential relationship is found to exist, the one to whom confidence was reposed may be held to a higher standard of disclosure and fairness than in an arm's length relationship.  *Id.*  See also, *Kennedy*, 21 Cal.App. 4th at 1204-05 (collecting cases).

Though neither Jeffrey nor Shane claim that Shane was a "partner" with Jeffrey while working at the firm, there is no dispute that Shane was employed by the firm and, thus, that Shane was an employee and therefore an agent of Jeffrey while employed by Jeffrey.  An agent has a fiduciary duty to act loyally for the principal's benefit in all matters connected with the agency relationship.  *Restatement (Third) Agency*, § 801.  The agent also has a duty not to use or communicate confidential information of the principal for the agent's own purposes or those of a third party.  *Id.* at § 805.  Termination of the relationship does not change the duty:

> An agent's duties concerning confidential information
> do not end when the agency relationship terminates.
> An agent is not free to use or disclose a principal's
> *confidential information* whether the agent retains a
> physical record of them or retains them in the agent's

19

1   memory.  If information is otherwise…confidential, the
2   means by which an agent appropriates for later use or
    disclosure should be irrelevant.  Feats of human
3   memory, however commendable and intriguing in many
    respects, should not be privilege as instruments of
4   disloyal conduct.  *Id.* Comment C. (emphasis in
    original)

5   Thus, independent of a lawyer/client relationship, Shane was an

6   agent and therefore had and has a duty of loyalty and

7   nondisclosure.

8       In addition, it cannot be ignored that Shane is Jeffrey's

9   son and is a lawyer.  Shane worked for Jeffrey for nearly twenty

10  years.  Jeffrey testified that Shane was his closest confidante.

11  Given such close personal family relationships, there was bound

12  to be confidential information passed between Jeffrey and Shane.

13  As a lawyer in Jeffrey's firm and Jeffrey's son, Jeffrey

14  surrendered some degree of control over much information.  Its

15  potential use is the concern as opposed to actual use.  *See*

16  *Raley,* 149 Cal. App. 3rd 1042 (1983) *and Kennedy,* 201 Cal. App.

17  4th 1197 (2011), both discussed *supra*.

18      Shane does not dispute that he was Jeffrey's counsel in the

19  matters Jeffrey lists.  He also does not dispute that he was Sona

20  Vartanian's counsel in certain matters.  Jeffrey testified he

21  relied on Shane in legal matters.  Doc. #104.  Shane also admits

22  he received information about his father primarily from outside

23  the attorney/client relationship.  Doc. #98.

24      Shane had the opportunity to learn of Jeffrey's approach to

25  litigation, strategies for maintaining a legal position,

26  inclinations concerning the pending dissolution with Pamela,

27  steps and techniques Jeffrey used in dealing with family

28  disputes.  All these issues are enough to find that the

confidences Jeffrey may have imparted upon Shane relate to this bankruptcy case and Pamela's efforts to protect her rights in this case.  This is a basis for disqualification.  See, *Trone v. Smith*, 621 F.2d 994, 1001 (9th Cir. 1980).

Though "speculative" contentions of a conflict are insufficient to disqualify counsel, *DCH Health Services Corp. v. Waite*, 95 Cal.App. 4th 829, 833 (2002), it is well established that the disqualification remedy is necessarily "prophylactic." *Hetos Investments, Ltd. v. Kurtin*, 110 Cal.App. 4th 36, 48 (2003).  Absolute "certainty" of a conflict is never a prerequisite to disqualification.  *Comden v. Superior Court*, 20 Cal. 3d. 906, 913 (1978).  An affirmative showing of existing injury from the misuse of privileged information is not required. *McDermott Will & Emery LLP v. Superior Court*, 10 Cal.App. 5th 1083, 1120 (2017). The risk of use confidential information is generally sufficient to warrant disqualification.  *O'Gara Coach Co., LLC v. Ra*, 30 Cal. App. 5th 1115, 1126 (2019).

And here, the risk of the use of confidential information in connection with Shane's representation of Pamela becomes evident with a review of some of Shane's filings in this bankruptcy case. Shane filed an adversary proceeding against Jeffrey contesting dischargeability of alleged debts owed Pamela (AP #25-1022).  The allegations include wrongful concealment of assets and disposing of assets that were part of the law practice that employed Shane. Pamela also alleges that Jeffrey violated fiduciary duties by failing to account or report aspects of the community property law firm when requested.

///

Shane also filed a motion for relief from stay or alternatively for abstention on behalf of Pamela Reich (DC #SR-2). The motion, among other things, seeks relief to permit a trial on community property division and litigate claims of breach of fiduciary duties and damage claims against the estate and permit litigation of breach of fiduciary claims against Sona Vartanian, who worked at the Reich law firm contemporaneously with Shane. Shane has filed an objection to Jeffrey's claim of exemptions and Pamela's motion to claim exemptions. Among other things, the objection raises the issue that Jeffrey allegedly claimed exemptions in property he does not own at the expense of Pamela who resides in a home in Clovis which should be the subject of Jeffrey's exemption claim. (DC #SR-3). Pamela's motion makes similar claims.

The exemption objection also raises the same alleged breach of fiduciary duties. Just these alone demonstrate that it is impossible to separate Shane's knowledge concerning these issues from his twenty-year employment relationship with Jeffrey. This "amalgamation of interrelated factors" supports disqualification of attorney Shane Reich. *Kennedy,* 201 Cal. App. 4th 1197.

3.   Shane's counter arguments do not detract from the reality of his and Jeffrey's relationship.

First, Shane argues that his previous representation of Jeffrey is not substantially related to issues in this bankruptcy case. Further, the matters in which he represented Jeffrey were minor and are temporally distant.

The court is unpersuaded. First, previous representation by Shane is not relevant to the inherent power of the court to

review the disqualification issue.  Shane also ignores the
confidential information imparted that is unrelated to the
specific matters described in the declarations.  Shane admitted
that information about his father mostly came from sources other
than his representation of Jeffrey.  Finally, the relationship is
not temporally distant.  Shane separated from his father's firm
in 2021, only four years ago.

Second, Shane argues that Jeffrey delayed in bringing this
disqualification motion and it was simply a tactical maneuver to
avoid making payments to his separated spouse.

This ignores the facts.  There was insignificant delay in
Jeffrey in bringing this motion in the bankruptcy case.  The
bankruptcy case was filed February 21, 2025.  Pamela Reich's
first appearance was on April 8, 2025.  This motion was filed
less than two months later.  Shane claims that Jeffrey knew that
he was assisting Pamela in the dissolution proceeding long before
the bankruptcy was filed.  This is not relevant, though, because
Shane has apparently made no formal appearance in the dissolution
proceeding in the Superior Court.

Relatedly, lack of payment to the spouse is a State Court
issue, and the court will make no ruling concerning that issue as
part of on this motion.

Third, Shane contends that any communication between he and
Jeffrey is not privileged anyway because Sona Vartanian has filed
suit against Shane and others and Jeffrey raised the issue of
Shane's alleged embezzlement of monies from the law firm.

Jeffrey has testified that he is not pursuing that
embezzlement claim.  Doc. #148.  Therefore, that is not a basis

for a waiver.  Also, Shane admits that an attorney/client
relationship existed between he and Jeffrey and separately
between he and Sona Vartanian.  Shane has never denied that
Jeffrey reposed trust and confidence in Shane.

Shane cites *Dubrow v. Rindlisbacher (In re Rindlisbacher)*,
225 B.R. 180 (BAP 9th Cir., 1998).  There, attorney Dubrow
represented the debtor in debtor's dissolution action.  While
testifying in that action, the debtor misrepresented that he had
not received rental income from a house the debtor and his ex-
spouse owned.  Attorney Dubrow asked the debtor during a recess,
and debtor said that he had received rental income.

After his client filed bankruptcy, Dubrow filed an objection
to discharge under 11 U.S.C. § 727.  The debtor filed a motion
for summary judgment arguing that Dubrow disclosed confidential
information in bringing the adversary proceeding.  The Bankruptcy
Court granted the motion, and Dubrow appealed.  The Bankruptcy
Appellate Panel affirmed.

The Appellate Panel held that the debtor seeking a discharge
was not a breach of a duty to pay his counsel.  Further, the
debtor had no claim against his attorney that his attorney needed
to defend.  So, the exception to the attorney/client privilege
was inapplicable. *Rindlisbacher*, 225 B.R. at 183.  As there was
no waiver in *Rindlisbacher*, it is of no assistance to Shane here.
Further, any scope of an attorney/client privilege waiver is
narrowly defined and the information required to be disclosed
must fit strictly within the confines of that waiver. *Sony
Cmptr. Ent. Am., Inc. v. Great American Ins. Co.*, 229 F.3d 632,
635 (N.D. Cal. 2005).  Hence, any waiver would have to be

narrowly construed and would not assist Shane with respect to the court's inherent authority.

Finally, Shane argues that most of the information he obtained was outside of the attorney/client relationship and was only of general business practices or litigation philosophy not protected or relevant.  Shane cites *Banning Ranch Conservancy v. Superior Court*, 193 Cal. App. 4th 903, 918 (2011).

The case is not persuasive.  In *Banning,* the Court of Appeal issued a peremptory writ reversing a trial court order disqualifying Banning's counsel.  There, the law firm represented the City of Newport Beach in matters many years before and unrelated to the current litigation.  The issue there was continuing validity of retainer agreements between the firm and the city.  There was no evidence of a relationship or anything close to an ongoing confidential relationship despite the retainer agreements. The agreements all reserved the right for the law firm to decline representation.

There is no such separation here.  Shane was in a confidential relationship with Jeffrey and had received confidential communications.  Based on the record, Shane received a wide amount of information about Jeffrey and his affairs.  Given the relationship between Jeffrey and Shane, the information was confidential.

Though not a counter argument, Shane also raises the issue of Pamela's prejudice should Shane be disqualified.  The court is mindful of that.  A disqualification motion involves a conflict between a client's right to counsel of her choice, on the one hand and the need to maintain ethical standards of professional

responsibility, on the other.  Although disqualification

necessarily impinges on the litigant's right to counsel of his or

her choice, the decision on a disqualification motion involves

more than just the interest of the parties.  When ruling on a

disqualification motion, the paramount concern must be to

preserve public trust in the scrupulous administration of justice

and the integrity of the bar.  The important right to counsel of

one's choice must yield to ethical considerations that affect the

fundamental principles of our judicial process.  *McDermott Will &*

*Emery LLP*, 10 Cal. App. 5th at 1119 (citations omitted).

## **CONCLUSION**

For the forgoing reasons Shane Reich is disqualified from

representing the interest of Pamela Reich in this bankruptcy

case.  Jeffrey has also asked that Shane be disqualified from

representing any other third party in this bankruptcy case.  In

the interest of judicial economy, the court agrees that further

examination of the disqualification of Shane Reich in this

bankruptcy case would be wasteful of both the parties' and

judicial resources.  Jeffrey has not provided any credible

suggestion that Shane would be representing a third party in this

bankruptcy case.  The court declines to enter that order now.

However, the court reminds both Jeffrey and Shane as well as all

counsel of their duties under Fed. R. Banky. Proc. 9011.  This

///

///

///

///

court has set forth why Shane's involvement in this bankruptcy is subject to vigorous scrutiny.  A separate order shall issue.

**Dated:** Sep 11, 2025                    **By the Court**

René Lastreto II, Judge
United States Bankruptcy Court

**Instructions to Clerk of Court**
**Service List - Not Part of Order/Judgment**

     The Clerk of Court is instructed to send the Order/Judgment or other court generated document transmitted herewith to the parties below.  The Clerk of Court will send the Order via the BNC or, if checked ___, via the U.S. mail.

Jeffrey Kane Reich
11520 N. Via Campagna Dr.
Fresno, CA 93730

Irma Edmonds
2501 West Shaw Avenue, Ste. 124
Fresno, CA 93711

Anthony D. Johnston
1600 G Street, Ste. 103
Modesto, CA 95354

Megan Zavieh
12460 Crabapple Road
Ste 202-272
Alpharetta, GA 30004

Peter B. Bunting
2304 W. Shaw Ave. Ste. 103
Fresno, CA 93711

Shane Reich
P.O. Box 1381
Clovis, CA 93613